310336 Ace Hardware v. Quinton Huffington Counsel, you may proceed. Thank you, Your Honors. May it please the Court, Counsel. My name is George Clawkey on behalf of Ace Hardware in this case. Basically, this case comes down to a causal connection issue, and I acknowledge that the standard and the burden is a manifest way to the evidence in this case. I believe that, and I think the case of Vogel is kind of instructive here, is that the petitioner in this case claims that he worked for Ace Hardware for approximately four months, was pulling an item, a birdseed he described, and felt a pinch in his shoulder. He sought immediate treatment, and I have no issue with the fact that he may have felt pain at work. The issue comes into play because prior to his employment at Ace Hardware, he had another work-related injury in 1997 while he was working as a volunteer fireman swinging an axe. He went to see several doctors, went to see Dr. Wolin, who ultimately did surgery on that shoulder, the same shoulder that he claims he injured at Ace Hardware, in 1998. After that surgery, Dr. Wolin testified that he had recovered from the surgery, and he was released back to work. However, in the year 2000, he returned to Dr. Wolin with additional complaints to the same shoulder. Now, those complaints were the exact same complaints that he had prior to the surgery, and that was admitted to by Dr. Wolin in his report, and even by the petitioner himself, said this is just like in 1998, prior to my surgery. Let's just stop right there, though. Wasn't there medical evidence that there was a tear that had not been there prior to September 21st, 2005, when he looked at the MRIs? Isn't there some medical evidence to support a change? There is an MRI that it was interpreted by Dr. Wolin as a tear, although Dr. Cohen, the respondent's medical evaluator, also reviewed those films and found that he was unable to tell whether there was a tear because of the prior surgery. And mind you, Dr. Wolin said in his deposition that there was no prior tear to that glenoid labrum. But if you look at his surgical report, he repaired one. Okay. And what did you ask him, or what did the Respondent's Counsel ask him in the deposition? Was he confronted with that discrepancy? Yes, he was. And he maintained that there was no tear. The problem is that when you look back at the operative report, there was a tear. So, you know, and that's an inconsistency. And I understand that the commission and the arbitrator can say, look it, we don't find Dr. Cohen credible or persuasive, even though they didn't use those terms, because he's inconsistent. And Dr. Cohen's inconsistency was his first opinion in November of 2005 said it's related. The second opinion in December of 2005 says it's not related. So you've got two inconsistent doctors. So the commission weighs the two inconsistent medical opinions and goes with Dr. Wolin. Well, but the reason that Dr. Cohen was inconsistent is because he didn't have all the medical information available to him. Once he had both the 2000 return back to Dr. Wolin and now a 2004 return back to Dr. Wolin by petitioner, again complaining of the same shoulder complaints, now Dr. Wolin says, you know what, I think, and actually he states, he was seen in the office March 2, 2004, continues to have discomfort in his right shoulder, now six years post-arthroscopic surgery. For the last year or so noted increasing pain, feeling of giving way in his right shoulder, notes paresthesias into the digits of one or two volar aspects of his right hand. Although he states he was better after surgery, his preoperative symptoms have recurred. This is in 2004, shortly before he takes his job at HR. Is the respondent contesting there was an accident at work? There was some incident at work. Is that being contested? There was pain at work. I'm not contesting the fact that Mr. Buffington felt pain while he was working. Whether that's an accident or not, I think we're, you know, now when you have a preexisting condition where he had ongoing problems, and he told Dr. Cohen, by the way, that this happens to him like five times a year. Let's assume he had a preexisting condition. I don't even know if counsel on your side is going to dispute the prior problems as a firefighter. I think that's in the record. Right. So obviously you're familiar with the CISPRO case that says employers take employees as they find them, and that the employer will not be denied recovery even though he has a preexisting condition, as long as the employment is a causative factor, accelerates the condition, et cetera. It does not have to be the sole causative factor, even the primary cause of the medical issue. So why wouldn't this case fall within CISPRO? Because there's no acceleration. There's no acceleration of this. In fact, if you look at Vogel, which cites both the Teske and the Lassley case, every natural consequence that flows from an injury that arose out of and in the course of claimant's employment, and we're contending that's the 1997 injury as a firefighter, is compensable unless caused by an independent intervening accident that breaks the chain of causation between the work-related injury and the ensuing disability. And that would have been what? What was the independent intervening accident? I'm saying there is none. It says that other incidents, whether work-related or not, may have aggravated the claimant's condition is irrelevant. So if you have somebody that's got ongoing problems because of a prior incident, and then they feel pain at work, that doesn't mean that that event is the cause of his problems. You're saying he just had a temporary exacerbation of his preexisting injury, and is that what Cohen ultimately said? That's what Cohen, that was his opinion. So, again, we still have two differing medical opinions, and it's a manifest way of the evidence, as you acknowledged candidly at the beginning of your argument. You know, we have to determine whether an opposite conclusion is clearly apparent, and there's certainly evidence in the record based on Dr. Wolin's testimony that supports the commission's decision. Agree with that? No. I believe that there is clear evidence in the record that his condition was preexisting and not accelerated by this event. And I don't know how you square the Vogel case, which found that subsequent auto accidents resulting in an immediate, you know, problem, additional problems for Mr. Vogel wasn't an intervening cause, whereas simply pulling a box of birdseed when he's had all these ongoing problems is an intervening cause, and now the new employer has to. As far as that point, Dr. Cohen testified that the incident at work, pulling the box of birdseed, would be sufficient to cause a labrum tear, right? It would be, but then he found that there was no tear. But as far as, you know, the incident itself, your doctor said, yeah, that would be enough to cause a tear. It could be, and that was prior to, well, actually that was in his deposition, so he had all of the information available at that time, but his ultimate opinion was he needed this anyway. The surgery wasn't technically advised by Dr. Wolin, but he advised an MRI before his employment at Ace Hardware. Go have an MRI and go have an EMG-NCV. The petitioner never had those tests done. Instead, he gets a job at Ace Hardware, feels pain at work, and now, according to the commission, all of the prior things are irrelevant because he said he had pain at work at the commission, and I don't think they followed Vogel in that situation. Lastly, with respect to prospective medical, there was never an award of prospective medical in this case, either by the arbitrator or by the commission. In fact, if you look at the commission's decision, the form that is submitted doesn't have any indication that there is an award for that basis. So I suppose the respondent would also be asking clarification of what exactly was awarded in this case so that we have some clarity as we move forward. Nevertheless, we would ask the court to reverse the commission's decision and find that under Vogel this was an extension of his prior condition. Thank you. Thank you, counsel. Counsel, reply. Good morning, Your Honors. Counsel, my name is David Oliveira. I represent Mr. Buffington, the employee in this particular case. I think there's ample evidence in the record for the commission to accept the opinions of Dr. Woolin, the treating physician, versus the Section 12 examination physician, Dr. Cohn. And as this Court had mentioned, there were some inconsistencies with Dr. Cohn's opinions, which I think the arbitrator and the commission zeroed in on. Particularly, I think it's important to note that Dr. Cohn did not ever diagnose a labrum tear in Mr. Buffington's right shoulder, even though the MRI showed it, even though Dr. Woolin testified to his clinical examination that there was a labrum tear. That's an inconsistency. Dr. Cohn gave an opinion in November of 2005 where he causally connected the petitioner's condition in his right shoulder to the event that occurred at work. He didn't have to. He indicated that he would like to see other additional records as far as treatment-wise, those kinds of things. Then he revises his opinion, which I think undermines his credibility. He gives a report a month later, and he indicates that, oh, by the way, all these conditions I found him with, those preexisted this particular work injury. Let me stop right there. Your opponent seems to be suggesting that Woolin was waffling on whether or not there was a labrum tear. Is that accurate? Not really. Dr. Woolin in his operative report back in 1998 indicates that the labrum was intact. He found what he called to be a slight tear, which he corrected with a motorized razor. So apparently it was so inconsequential he didn't have to do any suturing, didn't have to do any major surgery, what have you. It was something that he saw, corrected, and everything, as far as he was concerned, was fine. When the MRI was taken in 2005, it showed a type 3 labrum tear, which Dr. Woolin said he can only have from trauma. Dr. Woolin testified that pulling the 50-pound bag could cause the tear. Dr. Cohn also testified that that particular event could cause the tear in the labrum. What's confusing in this particular case is Mr. Buffington had a shoulder procedure in 1998 where they used heat to shrink up his shoulder because there was some instability in it. His complaints at that time were numbness and tingling in his hand. Unfortunately, that procedure is no longer used, and apparently the results weren't terribly great. So he continued to have these occasional periods where he felt numbness and tingling. Those are not the signs of a labrum tear. A labrum tear's signs are pain. So they're kind of mixing and matching. They're saying, oh, yeah, he's always had these symptoms, so this is really nothing new. Well, they're comparing the wrong apples and oranges. The symptoms for labrum tear are pain. And when the doctor does a clinical exam called the O'Brien test, that's usually an indication that there's a labrum tear. The gold standard is to have the MRI with an arthrogram done to see if there's actually a tear visible to the radiologist. In this particular case, after the event that we're here for, they did such a test. The radiologist determined that there was a labrum tear. Dr. Woolin determined there was a labrum tear. And Dr. Cohn decided to ignore both of those opinions and come up with his own, that there is no tear and that this is some preexisting condition. So I think the commission, based on the weight of the evidence, determined that Dr. Woolin, the treating physician who knows his shoulder better than anybody else, was correct in his analysis that this was a new injury. And I take deference to or I object to the remark that prospective medical was not awarded. The arbitrator, in his opinion, said he accepted Dr. Woolin's opinions. In particular, he mentions particular pages. In total, Dr. Woolin testified at his deposition that this gentleman needs a labrum repair surgery. So I think it's disingenuous to say, well, now we're not really sure if prospective medical was awarded. All the arbitrator said was, I accept his opinions, but he didn't say, and I order this prospective medical care. That he did not do. So are we to take it that every time an arbitrator says, I agree with the opinions of Dr. So-and-so, if that doctor has testified that there needs to be surgery, that there's been an order for prospective surgery? I don't necessarily think in every case, but in this particular case, that was the whole reason for the 19B, was the fact that they had disputed that he needed any further medical care. So that's why we went through the depositions, the hearings, the whole nine yards, was to establish whether this gentleman needed further care. The only further care that this gentleman can get is surgery. That's the only cure for a labrum tear. So I think it's disingenuous to say, well, we're not sure that he needs prospective medical. When they took their review before the commission, one of the check marks that you make is, under medical expenses, is prospective medical care necessary? They didn't dispute it. They've never disputed it until today. Now, I think this is just the ongoing delay in accepting responsibility for what appears to be a pretty obvious case. They didn't accept it at the arbitration level, the commission level, the circuit court level, and now we're here before you, gentlemen, and they're asking that, well, we need some direction on whether there's going to be prospective medical. This is just a further delay in a case that didn't need to go as long as it did. This is five years post when this gentleman first started his case. I don't mean to get distracted from it, but I think it's obviously clear that the commission properly weighed the medical evidence and determined that Dr. Woolen was more credible. I think and I hope that at this particular junction, the result will be that Mr. Buffington can finally get his surgery so we can move forward with this particular case. I mean, whether or not prospective medical care was ordered, the employer has a responsibility to pay his reasonable and necessary medical expenses. He can go ahead and get the surgery, right? I mean, with the progress of this particular case, I would expect that we would be back before the arbitrator disputing whether or not the arbitrator, in fact, really meant to say he has the right to have prospective medical. There was an award of TTD. There was an award of medical. So I see this just carrying on to another level, to be honest with you, unless there's some specific decision on this Court's part that, yes, that's what the intent was by the arbitrator. The commission's intent was still the same. There was never any dispute along this whole long path, this arduous path, that future medical was not going to be taken care of. And that's what you're asking us to hold on? Yes, sir. Okay. Thank you, counsel. Just briefly, Your Honors, going back to the March 2, 2004 report by Dr. Wolin, where in which he noted that the paresthesis and all the symptoms that Petitioner was now complaining of prior to the surgery, and he says the pre-opter symptoms have recurred. At the end of that report, it was his impression that there was recurrent instability with neuropraxia, and he ordered an MRI arthrogram as well as an EMG NCV, which Petitioner never had. But he states the current condition, and this is in 2004, the current condition of his shoulder is related to his work injury of August 1997. So he had the opinion as early as 1994, March of 1994, that the condition that was being complained of by his patient was related to the 1997 injury. And this is after the surgery and shortly before he goes to work at Ace Hardware. Again, we would ask that the court reverse the decision of the commission. Thank you. Thank you, counsel, for your arguments on this matter. We'll be taking it under advisement.